## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| MICHELLE THIELE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KATE SPADE, LLC | ) | |
| d/b/a KATE SPADE NEW YORK | ) | **Case No. _____** |
| 10 Hudson Yards | ) | |
| New York, NY 10001 | ) | |
| | ) | |
| SERVE ON: | ) | **JURY TRIAL DEMANDED** |
| CT Corporation System | ) | |
| 28 Liberty Street | ) | |
| New York, NY 10005 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TAPESTRY, INC. | ) | |
| 10 Hudson Yards | ) | |
| New York, NY 10001 | ) | |
| | ) | |
| SERVE ON: | ) | |
| CT Corporation System | ) | |
| 28 Liberty Street | ) | |
| New York, NY 10005 | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Michelle Thiele, through undersigned counsel, files suit against Kate Spade,

LLC d/b/a Kate Spade New York, and Tapestry, Inc. and alleges as follows:

### PRELIMINARY STATEMENT

Defendant Kate Spade, LLC is a global life and style company that is a part of Defendant

Tapestry, Inc.'s house of brands.  Defendants (herein referred to collectively as "Kate Spade" or

"Defendants" unless specifically enumerated otherwise) sell handbags, clothes, jewelry, and

accessories all premised on their claim that the brand stands for "optimistic femininity" and that the "founding principles that define [their] style is synonymous with joy." Since the suicide of Defendants' founder Kate Spade in 2018, Defendants have housed the Kate Spade New York Foundation claiming to "inspire women to be the heroines of their own stories" and to support mental health and suicide prevention in women.

Notwithstanding Defendants' stated mission of supporting women's health and preventing suicides, Defendants' management and employees relentlessly targeted and retaliated against Plaintiff, Michelle Thiele, who was a high achieving manager at one of Defendants' stores, to the point where she attempted suicide.  Defendants discriminated against Ms. Thiele on the basis of disability and age, causing her to experience significant emotional distress before ultimately losing her employment as the result of Defendants' actions and failures to act. Defendants' conduct violated federal and state disability and age discrimination laws. Defendants further intentionally infliction of emotional distress upon Plaintiff.

### THE PARTIES

1.     Plaintiff Michele Thiele was an experienced and highly regarded manager at the Kate Spade retail store located at 700 Premium Outlets Boulevard 700A, Hagerstown, Maryland 21740. She lives in Pennsylvania.

2.     Kate Spade, LLC is company that was acquired by and is a part of the Tapestry, Inc. house of brands. Kate Spade sells products online and in retail stores, including at a retail store located in the Hagerstown Prime Outlets, located at 700 Premium Outlets Boulevard 700A, Hagerstown, Maryland 21740. Kate Spade has in excess of 5,000 employees and annual revenue over $500,000,000.  Kate Spade is headquartered at 10 Hudson Yards, New York, New York 10001.

3.     Tapestry, Inc. is a multi-national fashion holding company that owns Kate Spade and claims that it is devoted to an inclusive and diverse workplace. It has its global headquarters at 10 Hudson Yards, New York, New York 10001. Tapestry has over 12,000 employees and revenue in excess of $5.8 billion dollars annually.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343.  The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a)

5.     Venue in this Court is proper because the events alleged occurred in this district.

## ADMINISTRATIVE EXHAUSTION

6.     Ms. Thiele timely filed a charge with the United States Equal Employment Opportunity Commission (EEOC), with a cross-filing with the Maryland Commission on Civil Rights.

7.     The EEOC issued a Right to Sue notice to Ms. Thiele on August 26, 2020.

## FACTUAL ALLEGATIONS

8.     Michelle Thiele was born in 1964. She is a mother and wife who lives in Pennsylvania and takes pride in her work and her family.

9.     Ms. Thiele carries the emotional scars of a severely abusive childhood, a childhood which included broken bones, loaded weapons, and fear.  Sudden loud noises cause an emotional and visceral reaction for Ms. Thiele.

10.    Ms. Thiele has been diagnosed with Post-Traumatic Stress Disorder (PTSD), anxiety and depression.

11.     For Ms. Thiele, loud noises mean bad things are coming and transport her back to a childhood where sudden loud noises meant a blow was sure to follow.  Sudden, loud noises trigger her PTSD.

12.     Ms. Thiele's PTSD, anxiety, and depression substantially limit her in the major life activities of thinking, breathing, sleeping, and working.

13.     Despite her traumatic childhood, Ms. Thiele worked for more than two decades in retail earning accolades for her performance and leadership.

14.     On June 15, 2015, she was hired to be an Assistant Store Manager at Kate Spade New York in Hagerstown, Maryland.

15.     She was quickly promoted to Store Manager in November 2015.

16.     As a Store Manager, her job responsibilities included hiring and training staff, driving business, inventory control, and visual merchandising.

17.     Ms. Thiele's leadership at Kate Spade was successful.  She earned the highest employee retention rate from among 72 stores, drove sales at the Hagerstown store to a $300,000 improvement over prior years, and achieved a 68-74% shrink improvement in inventory.

18.     Because of her strong work ethic, leadership, and performance, Ms. Thiele was tasked with assisting at struggling stores and hiring for new stores.

19.     Ms. Thiele is described by other employees as a manager who lead by example, who did whatever was asked of her, and who was "meticulously professional."

20.     In October 2016, a new, young, District Manager named Danielle Merecki came on board as Ms. Thiele's regional supervisor.

21.     At that time, Ms. Thiele was one of only two full-time employees over the age of 40 at the Hagerstown store.

22.     Ms. Merecki began targeting Ms. Thiele and the only other older, full-time employee, Lori Kolb, with abusive and differential treatment in an effort to force them to resign because of their age.

23.     Younger workers received favorable treatment and were subjected to different rules and standards.

24.     Ms. Kolb soon resigned after being mercilessly berated by Ms. Merecki.  The "offense" for which Ms. Merecki berated Ms. Kolb was for having stood up for Ms. Thiele against Ms. Merecki's harassment.

25.     Unlike Ms. Kolb who had the financial security to resign, Ms. Thiele needed the income her job brought and had no choice but to take the humiliation and beg for her employer to stop.

26.     Kate Spade's management and employees targeted Ms. Thiele's PTSD and anxiety in a management-orchestrated campaign that led to Ms. Thiele attempting suicide.

27.     Ms. Merecki began firing off confetti canons at close range, unpredictably and over Ms. Thiele's express objection because she saw and enjoyed the terror it caused Ms. Thiele.

28.     While Kate Spade does use confetti canons to celebrate achievements, when Ms. Thiele had visible and obvious fear reactions to being startled by the canons, management began using the canons not to celebrate but to taunt and humiliate Ms. Thiele.

29.     The canons sounded like gunfire to Thiele and brought to the fore all the trauma from Ms. Thiele's childhood. Her fear was obvious and, in response, management laughed at her fear in front of other employees. Management looked for ways to startle Ms. Thiele in an effort to deliberately elicit a fearful response and then publicly humiliate her for that response.

30.     Ms. Kolb witnessed some of these events and described Ms. Thiele's palpable fear and anxiety in response to the confetti canons as "obvious."

31.     Ms. Kolb did not witness this kind of treatment towards any of the younger employees.

32.     While Ms. Thiele and Ms. Kolb followed rules and were mercilessly targeted, younger employees were permitted to work in a disheveled manner, smelling of alcohol. Some younger employees regularly came to work without having bathed without consequence.

33.     Ms. Thiele expressed to management that the confetti canons terrified her and requested that Ms. Merecki either refrain from firing the canons off in her presence or give her advance warning so that she could remove herself from the immediate area.

34.     Instead, management continued firing confetti canons in close proximity to Ms. Thiele and without warning.

35.     Worse, management began an orchestrated campaign targeting Ms. Thiele's disabilities.  At the direction of management, Kate Spade employees repeatedly planned and executed "jump scares" of Ms. Thiele.  For example, employees hid in movable shelving units and jumped out to startle Ms. Thiele, laughing when they succeeded in scaring her.

36.     Ms. Thiele's response to confetti canons fired at close range and jump scares was dictated by her PTSD.

37.     No other employees at the time received this kind of treatment.

38.     In December 2016, management directed an associate to jump out of the movable shelving units in the storage area to frighten Ms. Thiele and then laughed at Ms. Thiele's terror.

39.     Again, in January 2017, management instructed another employee to jump out of the same shelving units to startle Ms. Thiele, again laughing at her now predictable and sought after response.

40.     Again, in March 2017, management instructed a third employee to hide in the shelving units and jump out to startle Ms. Thiele. Again, there was laughter at Ms. Thiele's expense.

41.     In March 2017, management planned and directed a scheme to designed to frighten Ms. Thiele. On March 27, 2017, Ms. Merecki called Ms. Thiele who was at the store. Ms. Merecki informed Ms. Thiele that she was in Leesburg, Virginia some 75 miles away. Ms. Thiele believed Ms. Merecki's claims that she was in Virginia, but in reality, Ms. Merecki was calling from the parking lot of the Hagerstown store. Ms. Merecki had an associate let her into the store so that she could hide herself and then jump out and scare Ms. Thiele. Ms. Merecki howled with laughter when she succeeded in frightening and causing a visible reaction in Ms. Thiele.

42.     Ms. Merecki also scheduled operational assessments without Ms. Thiele's knowledge at times when she knew Ms. Thiele would not be present. This is not typical practice for Kate Spade New York as operational assessments are critically important and Store Managers are therefore expected to be present and participate in the process. Ms. Merecki had conducted an operational assessment in December 2016 when Ms. Thiele was not present at the store.

43.     On April 11, 2017, just weeks after Ms. Merecki planned and executed the plan to scare Ms. Thiele in the store, she conducted a second operational assessment in 4 months without

Ms. Thiele present. This was not done at the 11 other regional stores. Again, it is expected that during such assessments, the Store Manager will be present.

44.     Ms. Thiele was constantly on edge, awaiting the next canon fired at close range or jump scare. Her anxiety and PTSD were acutely activated. She had been not only repeatedly scared, but these events were then followed by humiliation as management led other employees to laugh at and ridicule her fear.

45.     On April 19, 2017, Ms. Thiele had a scheduled conversation with Ms. Merecki to discuss the upsetting, unusual, and discriminatory manner in which she was being treated. She provided management with a letter in which she specifically requested that management either stop firing the confetti canons or give her advance warning of the intent to fire off the canons so Ms. Thiele could remove herself from the immediate area.

46.     In response, Ms. Merecki indicated that she was going to get Human Resources involved and suddenly created fault in Ms. Thiele's performance which up until this point had been lauded.

47.     Instead of showing Ms. Thiele mercy, management retaliated against Ms. Thiele.

48.     On April 26 2017, Ms. Merecki arranged the seating at a mandatory meeting in DC. Management directed Ms. Thiele to sit right next to Ms. Merecki. After the meeting began, Ms. Merecki fired confetti canons just inches from Ms. Thiele's head.

49.     Ms. Thiele was visibly terrified and physically shaking all over, to the point where others commented and expressed concern for her.

50.     As Ms. Merecki's campaign escalated and was fueled by firing of the canons, jump scares, and interference in management meetings for which Ms. Thiele was responsible, Ms. Thiele's anxiety increased.

51.     Ms. Thiele felt that she could not escape the targeted campaign against her in her workplace and her requests for mercy and accommodation had been ignored.

52.     Ms. Thiele contacted the employee help line, but her workplace remained an unsafe place for her.

53.     Ms. Thiele experienced debilitating psychological symptoms. Her PTSD was so activated that she was afraid all the time, everywhere waiting for the next jump scare or cannon.

54.     In July 2017, Ms. Thiele attempted suicide to escape the pain of her workplace and the acute activation of her disability related symptoms caused by Kate Spade.  She was hospitalized as a result.

55.     On July 26, 2017, she applied for both FMLA and Short-Term Disability through her employer.

56.     In March 2018, she received Long Term Disability on the basis of the PTSD, anxiety, and depression that was the result of her employment with Kate Spade New York.

57.     However, on March 28, 2018, she received a letter from Nora Richardson, the Director of Human Resources indicating that she had exhausted her job-protected leave pursuant to the FMLA and that although her Long-Term Disability had been granted it did not provide job protection. She was given until April 11, 2018 to have her physician complete and sign a questionnaire and to authorize her physician to share information about her medical condition.

58.     Ms. Thiele provided the requested documentation. Her treating source completed the "Reasonable Accommodation Questionnaire" indicating that she had Post Traumatic Stress Disorder, Anxiety Disorder, and Depressive Disorder as the result of her employment conditions. Her treating source informed Kate Spade that she was expected to improve but that her co-workers and management would need to be educated about PTSD and would need to be provide

accommodations in the workplace. Her treating source indicated on the Questionnaire that her return was expected in three to six months.  Her treating source further specified that beginning in October 2016 several patterns of behavior from management including shooting off confetti canons that replicated the sound of gun shots caused her trauma and triggered PTSD symptoms.

59.     Ms. Thiele sought the reasonable accommodation that her employer stop firing the confetti canons near her and cease efforts to startle her and jump out to scare her.

60.     On April 11, 2018, Ms. Richardson in Human Resources sent Ms. Thiele an email indicating that Tapestry would investigate all of the concerns outlined in the information Ms. Thiele provided.

61.     However, Kate Spade/Tapestry never even spoke to Ms. Thiele about the serious events she had alleged.

62.     No investigation was conducted in response to Ms. Thiele's reports.

63.     In June 2018, Ms. Richardson requested and was provided with a "Reasonable Accommodation Follow-Up Questionnaire" in which Ms. Thiele's treating source indicated that as a result of the pattern of disturbing behavior by management, Ms. Thiele did not feel safe at work.

64.     No one ever spoke to Ms. Thiele about the deliberate pattern of abusive and frightening behavior to which she had been exposed, yet Human Resources advised her on July 18, 2018 that the investigation into Ms. Merecki's conduct was closed.

65.     Just a week later, Ms. Thiele was notified that her employment was terminated effective August 1, 2018.

66.     Ms. Thiele was targeted based on age and disability, treated differently than others, was denied reasonable accommodation, retaliated against, subjected to a hostile

10

workplace environment, and ultimately terminated in violation of both federal and state age and disability laws.

67.     Defendants acted with intent, malice, and reckless indifference to Ms. Thiele's rights.

68.     As a result of Defendants' conduct, Ms. Thiele suffered significant emotional distress, humiliation, embarrassment, frustration, to the point of suffering physical symptoms and attempting suicide.

69.     Ms. Thiele has also lost wages and benefits as a result of her termination.

**COUNT I**
**TITLE I OF THE AMERICANS WITH DISABILITIES ACT**
*WORKPLACE HARASSMENT*
*FAILURE TO MAKE REASONABLE ACCOMMODATIONS*
*TERMINATION*

70.     Plaintiff, Michelle Thiele, repeats and re-alleges the foregoing paragraphs in support of her claims.

71.     Title I of the ADA states that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

72.     Title I of the ADA defines discrimination to include "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or disability."  42 U.S.C. § 12112(b)(1).

73.     Title I of the ADA defines discrimination to include "utilizing standards, criteria, or methods of administration" that "have the effect of discrimination on the basis of disability." 42 U.S.C. § 12112(b)(3).

74.     Title I of the ADA further defines discrimination to include "not making reasonable accommodations . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. § 12112(b)(5).

75.     Title I of the ADA further defines discrimination to include  "denying employment opportunities" to an otherwise qualified employee "if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant."  42 U.S.C. § 12112(b)(5).

76.     Defendant Kate Spade is a covered employer with in excess of 500 employees.

77.     Defendant Tapestry, Inc. is a covered employer with in excess of 500 employees.

78.     Plaintiff is a qualified individual with a disability because her anxiety, depression, and PTSD cause her to be substantially limited in the major life activities of, *inter alia*, thinking, sleeping, interacting with others, and working.

79.     When her PTSD is triggered, Ms. Thiele experiences heart racing, difficulty sleeping, hypervigilance, nightmares, and debilitating anxiety.

80.     Defendants discriminated against Plaintiff by targeting her on the basis of disability and intentionally provoking her disability-related symptoms.

81.     Defendants discriminated against Plaintiff by subjecting her to a hostile workplace environment where employees knew of her disability and intentionally targeted her

disability by trying to startle and scare her despite repeated requests by Plaintiff not to do so given her disabilities.

82.     Defendants discriminated against the Plaintiff on the basis of disability by failing to make reasonable accommodations.

83.     Defendants discriminated against Plaintiff by terminating her on the basis of disability.

84.     Defendants' failure to act with the most basic decency and compliance with the ADA caused Plaintiff to experience trauma, fear, physical manifestations, and suicidal ideation.

85.     Defendants' conduct resulted in Plaintiff losing her employment and its wages and benefits, with significant financial repercussions for Plaintiff.

86.     Defendants' conduct was intentional, and with malice or reckless indifference.

87.     Defendants' conduct caused Plaintiff to suffer physical, mental and emotional suffering and financial harm.

**COUNT II**
**THE AMERICANS WITH DISABILITIES ACT**
***RETALIATION***

88.     Plaintiff, Michelle Thiele, repeats and re-alleges the foregoing paragraphs in support of her claims.

89.     The Americans with Disabilities Act ("ADA") states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful" by the ADA.  42 U.S.C. § 12203(a).

90.     The ADA further states that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on the account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other

individual in the exercise or enjoyment of, any right granted or protected by" the ADA. 42 U.S.C. § 12203(b).

91.    Defendant Kate Spade is an employer with in excess of 500 employees.

92.    Defendant Tapestry, Inc. is an employer with in excess of 500 employees.

93.    Plaintiff is a qualified individual with a disability. She is substantially limited in the major life activities of sleeping, interacting with others, thinking, and working.

94.    Defendants discriminated against Plaintiff by targeting her and intentionally provoking her disability-related symptoms.

95.    Defendants retaliated against Plaintiff for requesting reasonable accommodations by deliberately scaring her in ways Defendants had been informed were and had witnessed to be triggers for her disability-related symptoms.

96.    Defendants retaliated against Plaintiff for requesting reasonable accommodations by terminating her.

97.    Defendants retaliated against Plaintiff for reporting to management the discrimination that she was being subjected to on the basis of her disability.

98.    Defendants' conduct resulted in Plaintiff losing her employment and its wages and benefits, with significant financial repercussions for Plaintiff.

99.    Defendants' conduct was intentional, and with actual malice or reckless indifference.

100.    Defendants' conduct caused Plaintiff to suffer physical, mental and emotional suffering and financial harm.

**COUNT III**
**AGE DISCRIMINATION IN EMPLOYMENT ACT**
*WORKPLACE HARASSMENT*
*FAILURE TO MAKE REASONABLE ACCOMMODATIONS*

## *TERMINATION*

101.    Plaintiff, Michelle Thiele, repeats and re-alleges the foregoing paragraphs in support of her claims.

102.    Defendants violated the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq*.

103.    29 U.S.C. § 623(a)(1) states that it "shall be unlawful" for covered employers "to discharge any individual or otherwise discriminate against any individual respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

104.    29 U.S.C. § 623(a)(2) states that it "shall be unlawful" for covered employers "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age."

105.    Plaintiff is over the age of 40.

106.    Plaintiff is an otherwise qualified employee.

107.    Defendants are covered entities subject to the ADEA.

108.    Defendants engaged in conduct designed to target employees over the age of 40 with the goal of ending the employment of such individuals on the basis of age.

109.    Defendants discriminated against Plaintiff by targeting her on the basis of age.

110.    Defendants discriminated against Plaintiff by subjecting her to a hostile workplace environment due to her age.

111.    Defendants discriminated against Plaintiff by terminating her on the basis of age.

112.    Defendants' conduct resulted in Plaintiff losing her employment and its wages and benefits, with significant financial repercussions for Plaintiff.

15

113.    Defendants' conduct was intentional, and with actual malice or reckless indifference.

114.    Defendants' conduct caused Plaintiff suffer physical, mental and emotional suffering and financial harm.

### COUNT IV
### AGE DISCRIMINATION IN EMPLOYMENT ACT
#### *RETALIATION*

115.    Plaintiff, Michelle Thiele, repeats and re-alleges the foregoing paragraphs in support of her claims.

116.    The Age Discrimination in Employment Act (ADEA) states that "[i]t shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by" the ADEA.  29 U.S.C. § 623(d).

117.    Michelle Thiele is over the age of 40.

118.    Defendants are covered entities pursuant to the ADEA.

119.    Defendants engaged in conduct designed to target employees over the age of 40 with the goal of ending the employment of such individuals on the basis of age.

120.    Defendants discriminated against Plaintiff by targeting her on the basis of age.

121.    Defendants retaliated against Plaintiff for reporting to management the discrimination that she was being subjected to on the basis of her age.

122.    Defendants' conduct resulted in Plaintiff losing her employment with its wages and benefits, with significant financial repercussions for Plaintiff.

123.    Defendants' conduct was intentional, and with actual malice or reckless indifference.

124.     Defendants' conduct caused Plaintiff suffer physical, mental and emotional suffering and financial harm.

## COUNT V
## MARYLAND FAIR EMPLOYMENT PRACTICES ACT
### *WORKPLACE HARASSMENT*
### *FAILURE TO MAKE REASONABLE ACCOMMODATIONS*
### *TERMINATION*

125.     Plaintiff, Michelle Thiele, repeats and re-alleges the foregoing paragraphs in support of her claims.

126.     The Maryland Fair Employment Practices Act states that an employer may not "discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of" the individual's age or disability.  Md. State Gov't Art. § 20-606(a)(1)(i).

127.     Employers may not "limit, segregate, or classify its employees or applicants for employment in any way that would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect the individual's status as an employee because of" the individual's age or disability.  Md. State Gov't Art. § 20-606(a)(2)(i).

128.     Employers may not "fail or refuse to make reasonable accommodations for the known disability of an otherwise qualified employee."  Md. State Gov't Art. § 20-606(a)(4).

129.     Employers may not "engage in harassment of an employee."  Md. State Gov't Art. § 20-606(a)(5); *see also* Md. State Gov't Art. § 20-611.

130.     Defendant Kate Spade is an employer with in excess of 500 employees.

131.     Defendant Tapestry, Inc. is an employer with in excess of 500 employees.

132.    Plaintiff is an individual with a disability because her anxiety, depression, and PTSD causes her to be substantially limited in the major life activities of, *inter alia*, thinking, sleeping, interacting with others, working, and eating.

133.    Plaintiff is over the age of 40.

134.    Defendants discriminated against Plaintiff by targeting her on the basis of disability and age and intentionally provoking her disability-related symptoms.

135.    Defendants discriminated against Plaintiff by subjecting her to a hostile workplace environment where employees knew of her age and disability and intentionally targeted her disability by trying to startle and scare her despite repeated requests by Plaintiff not to do so given her disabilities.

136.    Defendants discriminated against the Plaintiff on the basis of disability by failing to make reasonable accommodations.

137.    Defendants discriminated against Plaintiff by terminating her on the basis of age and disability.

138.    Defendants' failure to act with the most basic decency and compliance with the Maryland Fair Employment Practices Act caused Plaintiff to experience trauma, fear, physical manifestations, and suicidal ideation.

139.    Defendants' conduct resulted in Plaintiff losing her employment and its wages and benefits, with significant financial repercussions for Plaintiff.

140.    Defendants' conduct was intentional, and with actual malice or reckless indifference.

141.    Defendants' conduct caused Plaintiff suffer physical, mental and emotional suffering and financial harm.

## COUNT VI
## MARYLAND FAIR EMPLOYMENT PRACTICES ACT
### *RETALIATION*

142.    Plaintiff, Michelle Thiele, repeats and re-alleges the foregoing paragraphs in support of her claims.

143.    An employer "may not discriminate or retaliate against any of its employees" because the individual has either "opposed any practice prohibited" by the Maryland Fair Employment Practices Act, or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" the statute.  Md. State Gov't Art. § 20-606(f).

144.    Defendant Kate Spade is an employer with in excess of 500 employees.

145.    Defendant Tapestry, Inc. is an employer with in excess of 500 employees.

146.    Plaintiff is an individual with a disability.

147.    Plaintiff is over the age of 40.

148.    Defendants retaliated against Plaintiff for requesting reasonable accommodations by deliberately scaring her in ways Defendants had been informed were and had witnessed to be triggers for her disability-related symptoms.

149.    Defendants retaliated against Plaintiff for requesting reasonable accommodations by terminating her.

150.    Defendants retaliated against Plaintiff for reporting to management the discrimination that she was being subjected to on the basis of her age.

151.    Defendants' conduct resulted in Plaintiff losing her employment and its wages and benefits, with significant financial repercussions for Plaintiff.

152.    Defendants' conduct was intentional, and with actual malice or reckless indifference.

19

153.    Defendants' conduct caused Plaintiff to suffer physical, mental and emotional suffering and financial harm.

**COUNT VII**
**INTENTIONAL OR RECKLESS INFLICTION OF EMOTIONAL DISTRESS**

154.    Plaintiff, Michelle Thiele, repeats and re-alleges the foregoing paragraphs in support of her claims.

155.    Defendants knew that Plaintiff had intense physical and emotional reactions to being startled.

156.    Despite Defendants' knowledge and Plaintiff's requests that she be given advance warning if confetti canons were going to be fired off near her, Defendants refused to comply and in fact deliberately set off confetti canons in close proximity to Plaintiff without advance warning.

157.    Defendants knew or should have known that having employees and managers hide in storage areas and jump out at Plaintiff would cause her to be afraid.

158.    Defendants acted on their knowledge by intentionally or recklessly engaging in conduct designed to scare Plaintiff.

159.    Defendants' conduct was extreme and outrageous.

160.    Defendants knew or should have known that its conduct was likely to and did cause severe emotional distress.

161.    Plaintiff suffered physical and emotional harm as the result of Defendants' conduct.

162.    Defendants had no right or excuse to engage in such conduct.

163.    Plaintiff did not consent to such conduct.

**DEMAND FOR JURY TRIAL**

Ms. Thiele demands a jury trial in this action for all claims so triable.


**RELIEF**

WHEREFORE, Ms. Thiele respectfully requests that the Court provide the following relief:

a.   Issue a declaratory judgment that Kate Spade discriminated against Ms. Thiele on the
basis of disability and age subjecting her to emotional and financial harm and;

b.   Issue a declaratory judgment that Kate Spade retaliated against Ms. Thiele on the basis of
disability and age subjecting her to emotional and financial harm and;

c.   Award compensatory damages;

d.   Award punitive damages;

e.   Award reasonable costs and attorneys' fees; and

f.   Award any and all other relief that may be necessary and appropriate.

Respectfully submitted,


s/ Mary C. Vargas
Mary C. Vargas
STEIN & VARGAS, LLP
10 G Street NE, Suite 600
Washington, DC 20002
Tel: (240)793-3185
Fax: (888) 778-4620
mary.vargas@steinvargas.com


Date:  October 23, 2020