IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **MICHELLE THIELE,** | * | |
| | * | |
| **Plaintiff,** | * | |
| v. | * | Civil Case No. SAG-20-3086 |
| | * | |
| **KATE SPADE LLC,** *et al.,* | * | |
| | * | |
| **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### **MEMORANDUM OPINION**

Plaintiff Michelle Thiele ("Thiele") filed this employment discrimination lawsuit against Kate Spade LLC ("KSLLC") and Tapestry Inc. ("Tapestry") (collectively, "Defendants"). Defendants have filed a partial Motion to Dismiss the Complaint ("the Motion"), ECF 4. Thiele filed an opposition, ECF 11, and Defendants filed a reply, ECF 12. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons stated herein, the Motion will be granted.

**I.      FACTUAL BACKGROUND**

The facts below are derived from the Complaint and are taken as true for purposes of this Motion. ECF 1. Thiele served as manager of the Kate Spade retail store in Hagerstown, Maryland, beginning in 2015. *Id.* ¶ 1. Tapestry acquired the Kate Spade brand and operates the stores. *Id.* ¶ 2. The Complaint alleges that "Kate Spade LLC is company [sic] that was acquired by and is a part of the Tapestry, Inc. house of brands." *Id.* It further alleges that "Kate Spade has in excess of 5,000 employees." *Id.*

Thiele, who was born in 1964, experienced severe abuse in her childhood. *Id.* ¶ 9. She suffers from Post-Traumatic Stress Disorder, anxiety, and depression, triggered in part by sudden loud noises. *Id.* ¶¶ 9-11. Nevertheless, she performed successfully as manager of her Kate Spade

1

store, excelling in several areas. *Id.* ¶ 17. In October, 2016, a new "young" district manager, Danielle Merecki, became Thiele's regional supervisor. *Id.* ¶ 20. At that time, only two full-time employees over age 40 worked in the Hagerstown Store, Thiele and Lori Kolb. *Id.* ¶ 21. The Complaint alleges that Merecki "began targeting" Thiele and Kolb "with abusive and differential treatment in an effort to force them to resign because of their age." *Id.* ¶ 22. It alleges that "[y]ounger workers received favorable treatment and were subjected to different rules and standards." *Id.* ¶ 23. In particular, "younger employees were permitted to work in a disheveled manner, smelling of alcohol. Some younger employees regularly came to work without having bathed without consequence." *Id.* ¶ 32. In the end, Kolb resigned after "being mercilessly berated by" Merecki "for having stood up for Ms. Thiele against Ms. Merecki's harassment." *Id.* ¶ 24.

Kate Spade uses confetti cannons to celebrate certain achievements. *Id.* ¶ 28. Merecki "began firing off confetti canons [sic] at close range, unpredictably and over Ms. Thiele's express objection because she saw and enjoyed the terror it caused Ms. Thiele." *Id.* ¶ 27. Management, including Merecki, laughed at Thiele's discomfort and then "looked for ways to startle Ms. Thiele in an effort to deliberately elicit a fearful response and then publicly humiliate her for that response." *Id.* ¶ 29. Thiele told Merecki that the confetti cannons "terrified her and requested that Ms. Merecki either refrain from firing the canons [sic] off in her presence or give her advance warning so that she could remove herself from the immediate area." *Id.* ¶ 33. Nevertheless, Merecki persisted firing the cannons without warning Thiele. *Id.* ¶ 34.

Further, Kate Spade employees began engaging in "jump scares" of Ms. Thiele, at the direction of management. *Id.* ¶ 35. The employees laughed when they successfully scared her. *Id.* These "jump scare" incidents occurred in December, 2016, January, 2017, and March, 2017.

*Id.* ¶¶ 38-40.  Merecki herself engaged in a "jump scare" of Thiele in March, 2017, after leading Thiele to believe that she was in Virginia that day.  *Id.* ¶ 41.

Merecki also scheduled operational assessments of the Hagerstown store on two occasions when Thiele was off premises.  *Id.* ¶¶ 42, 43.  In Kate Spade's standard practice, the store manager is present for such assessments.  *Id.*

On April 19, 2017, Thiele presented Merecki with a written letter requesting that she be given advance warning if the confetti cannons were to be fired.  *Id.* ¶ 45.  In response, Merecki indicated that she was going to get Human Resources involved, citing deficiencies in Thiele's performance.  *Id.* ¶ 46.  On April 26, 2017, Thiele attended a management meeting in Washington, DC, at which Merecki arranged to sit next to Thiele.  *Id.* ¶ 48.  "After the meeting began, Ms. Merecki fired confetti canons [sic] just inches from Ms. Thiele's head."  *Id.*  Thiele was terrified and physically shaken by the incident.  *Id.* ¶ 49.

As Thiele's psychological symptoms worsened from the persistent conduct, she attempted suicide and was hospitalized in July, 2017.  *Id.* ¶ 54.  She eventually received long-term disability in March, 2018.  *Id.* ¶ 56.  On March 28, 2018, Thiele received a letter from the Director of Human Resources, giving her until April 11, 2018 to provide medical documentation of her condition.  *Id.* ¶ 57.  Thiele provided the requested documentation, in which her treating medical source opined that her return to work would be expected in three to six months.  *Id.* ¶ 58.  She requested the reasonable accommodation that her co-workers and management be educated about PTSD, stop firing confetti cannons near her, and cease their efforts to jump out and scare her.  *Id.* ¶¶ 58-59.

Although Human Resources expressed an intent to investigate Thiele's concerns, no representative ever spoke to her about the allegations.  *Id.* ¶¶ 60-62.  Instead, on July 18, 2018, Thiele learned that the investigation into Merecki's conduct had been closed.  *Id.* ¶ 64.  Shortly

thereafter, Thiele received notice that her employment would be terminated effective August 1, 2018.  *Id.* ¶ 65.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to test the legal sufficiency of a complaint by way of a motion to dismiss.  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), aff'd sub nom., *McBurney v. Young*, 569 U.S. 221, 133 S. Ct. 1709, 185 L.Ed.2d 758 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  *See In re Birmingham*, 846 F.3d at 92.

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'. . . .") (citation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  But a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not

countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). But a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), cert. denied, 566 U.S. 937, (2012).

### III. ANALYSIS

Thiele asserts both age-based and disability-based claims. Defendants have not sought dismissal as to her claims of disability discrimination and retaliation under the Americans with

Disabilities Act ("ADA") or her corresponding disability-related claims under the Maryland Fair Employment Practices Act ("FEPA"). Similarly, Defendants have not sought dismissal of Thiele's tort claim for intentional or reckless infliction of emotional distress. Instead, Defendants' motion is limited to (1) Thiele's age-based claims, and (2) her claims against KSLLC.

### A. Age-based Discrimination Claims

Thiele alleges that she was subjected to a hostile work environment, and eventually terminated, because of her age. However, her Complaint is bereft of facts suggesting age-based harassment or discrimination. One of the elements of a hostile work environment claim is that "the harassment was based on her protected status." *See, e.g.*, *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998) (dismissing hostile environment claim where "Montgomery never made any derogatory comments about race or age, and nothing about his conduct suggests it was based on these factors."). Other than the numerous allegations relating to her disability, Thiele's factual allegations are that Merecki was younger than she, that younger employees came to work disheveled or unshowered without facing repercussions, and that another employee over age 40 resigned after being chastised for protesting the harassment of Thiele. ECF 1. However, she does not allege that Merecki made any age-based comments suggesting discriminatory intent.

Moreover, animus based on age cannot be inferred, because while Thiele's Complaint includes several references to age, none of those references alleges that any *similarly situated* younger person was treated differently. *See Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190-91 (4th Cir. 2010). A decision to disregard questionable hygienic practices of younger co-workers, absent more, has no bearing on whether Merecki's inappropriate treatment of Thiele was age-based. If, on the other hand, Thiele had been disciplined for not showering, while a younger co-worker had not, that allegation could plausibly suggest age discrimination. Similarly,

6

if a younger co-worker had not been chastised for complaining about Merecki's conduct while the over-40 employee had been, that might evidence discrimination on the basis of age. If a younger employee had retained her employment under circumstances similar to those resulting in Thiele's termination, her claim would be sufficiently supported. Here, however, Thiele's allegations are limited to an assortment of conduct from persons of varying ages directed to persons of various ages, which do not collectively create a plausible inference that Merecki's alleged harassment of Thiele (or the company's decision to terminate her employment) was age-based. Her age discrimination claims will therefore be dismissed without prejudice.

### B. Age-based Retaliation Claim (Count IV)

For similar reasons, Thiele has not stated a plausible retaliation claim under the ADEA or its state law corollary. She certainly alleges that she complained to Merecki and others about the confetti cannons and jump scares, citing the detrimental effect on her mental health as a result of her preexisting conditions. She does not allege, however, that she reported that her co-workers were intentionally scaring her because of her age. Accordingly, she did not allege that she engaged in any protected activity relating to a claim of age-based discrimination or "opposed any practice made unlawful" by the ADEA. *See* 29 U.S.C. § 630(d); *see also Lauth v. Covance, Inc.*, 863 F.3d 708, 717 (7th Cir. 2017) (general complaints, not based on age, are not protected activity under the ADEA); *Blizzard v. Marion Tech. College*, 698 F.3d 275, 288-89 (6th Cir. 2012) (same); *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002) ("A plaintiff need not establish that the conduct [he] opposed actually constituted an [ADEA] violation. But a complainant must allege the predicate for a reasonable good faith belief that the behavior [he] is opposing violates the [ADEA].") (citations omitted). Thus, Thiele's ADEA and state law age-based retaliation claims also will be dismissed without prejudice.

### C. Claims Against KSLLC

Finally, the Complaint does not specifically allege which corporate entity employed Thiele. It alleges that KSLLC "is company [sic] that was acquired by and is part of the Tapestry, Inc. house of brands," but then it shifts to general use of the collective brand name "Kate Spade" in its remaining allegations. ECF 1. In the absence of facts plausibly stating a claim against KSLLC, dismissal without prejudice is appropriate. While the same rationale could technically apply to the claims against Tapestry, Defendants did not move to dismiss those claims. In fact, Defendants affirmatively confirm that Tapestry, the larger and more profitable of the two entities, was Thiele's employer. ECF 12-1. Thiele's remaining claims can therefore proceed against Tapestry. To the extent Thiele learns of facts in discovery suggesting that KSLLC is in fact the proper employer, she can seek leave to amend her Complaint to reassert her claims against that company.

### IV. CONCLUSION

For the reasons set forth above, Defendants' partial Motion to Dismiss, ECF 4, will be GRANTED. The claims against KSLLC, and the claims for age-based discrimination, harassment, and retaliation, will be dismissed without prejudice. A separate Order follows.


Dated:  January 6, 2021                                           /s/
                                                          Stephanie A. Gallagher
                                                          United States District Judge